OPINION OF THE COURT
Martin Evans, J.
In this action for a permanent injunction and damages arising from defendant’s alleged conversion of the shares evidencing plaintiff’s interest in a co-operative residential apartment, plaintiff seeks injunctive relief against defendant’s sale of such shares. The motion presents a question of first impression: Does the 1977 expansion of the homestead exemption to co-operatives nevertheless permit a judgment creditor to satisfy a judgment against the apartment of a guarantor of a debt contracted before the effective date of the amendment, but where the default occurred thereafter? An answer requires a consideration of both the definition of a debt and the nature of a guarantee.
The material facts are not in dispute. Plaintiff Michaels is the owner of 666 shares of capital stock of a co-operative corporation and the proprietary lessee of an apartment in an upper Manhattan building, owned by the corporation. In 1974 defendant Chemical Bank loaned $150,000 to Calico Productions, Inc. (Calico), and plaintiff executed an agreement with defendant by which he became a guaran *75 tor of payment. Calico’s outstanding debt to defendant was renewed several times. Until its default in 1979, Calico remained current in its obligations. Upon default, Calico owed an outstanding balance of $126,500. Chemical instituted suit against Calico, Michaels and two other parties, and was granted summary judgment by this court (Sherman, J., Sept. 10, 1980) in the amount of $154,925.60, including interest and costs. The stock certificate, which had been pledged to a third party as collateral for a loan, came into Chemical’s possession. Chemical then sought to have Michaels’ interest in the apartment sold by Sheriff’s auction. Michaels obtained a stay and commenced this action.
There is no question now before this court as to the validity or effectiveness of either the guarantee or the judgment. The guarantee was intended as security for the loan. The loan by defendant and the guarantee by plaintiff were consideration each for the other. Upon Calico’s default, plaintiff became primarily liable, i.e., indebted, to defendant. Rather, plaintiff contends that the stock certificate and lease which evidence his ownership interest in the apartment are covered by the homestead exemption and that defendant must therefore initiate a special proceeding under CPLR 5206 (subd [e]) before selling the co-operative shares.
CPLR 5206 (the so-called Homestead exemption) was amended by the Legislature in 1977 so as to increase the exemption to $10,000 from $2,000 and to embrace cooperatives and condominiums. (L 1977, ch 181.) The homestead exemption historically has been intended to protect the family of a judgment debtor by exempting his home from execution on an outstanding money judgment. The amendment sought to broaden the statute to make it better conform to the economic and demographic reality of late twentieth century New York. (See Governor’s Memorandum, NY Legis Ann, 1977, p 121.) In the section fixing the effective date, however, the bill containing the amendment provided that it “shall not affect the application of property to the satisfaction of a money judgment for a debt contracted before it takes effect.” (L 1977, ch 181, § 2.)
*76 What is a debt, and is a guarantee a debt envisioned by the statute? A debt in the legal rather than the lay sense, is a certain obligation to páy a sum of money or another thing of value, either at the present time or in the future. An obligation, in contrast, is a legally enforceable duty to perform or forbear. (Black’s Law Dictionary [5th ed], p 968; 26 CJS, Debt, p 2 et seq.; see United States v New York, New Haven & Hartford R.R. Co., 276 F2d 525.) Thus, while a debt is a species of the genus obligation, all obligations are not debts.*
A guarantee of payment is an obligation to answer for the debt of another. (Black’s Law Dictionary [5th ed], p 634; Gallagher v Nichols, 60 NY 438.) It is a secondary obligation in that it is collateral, and only meaningful in relation to, the independent obligation to pay (i.e., the debt) of the primary obligor, and is contingent upon his default. (See Pink v Investors Syndicate Tit. & Guar. Co., 246 App Div 172.) It is but an inchoate obligation since the condition precedent to its operation (viz., default by the debtor) may never occur. Therefore, while a guarantee neither is a debt, nor initially makes a guarantor a debtor to the primary obligor’s creditor, it binds the guarantor to a relationship under which he may become so indebted in the future — if, and when, the debtor defaults. (See United States v New York, New Haven & Hartford R.R. Co., supra, at p 530.)
In the case at bar, Michaels assumed the obligation of guarantee in 1974. Until Calico’s default in 1979, whether or not Michaels would ever become indebted to Chemical for its loan to Calico, was entirely speculative. Only upon Calico’s default in 1979 did Michaels’ obligation become *77 operative. Only then, some two years after the effective date of the amendment in question, did Michaels’ indebtedness arise and Chemical’s cause of action accrue. Calico’s debt, however, was pre-existing at the time of the amendment’s passage. It too was “contracted for” in 1974, but unlike Michaels’ guarantee “contracted for” at the same time, Calico’s obligation was a debt when contracted..
The court therefore concludes that Michaels’ guarantee is embraced by the expanded ambit of amended CPLR 5206 (subd [e]), rather than excluded by the statutory exception for pre-existing debts. Plaintiff’s request for injunctive relief is granted; the sale of Michaels’ rights in the apartment, except in conformance with CPLR 5206, is enjoined on the condition that Michaels post an undertaking in the amount of the judgment plus interest.

 “Debt”, on occasion, has been legislatively defined more broadly. For example, such a legislative definition (i.e., a particular meaning ascribed to a word by statute, for only that statute or a specific section of it) is found in the fraudulent conveyances article of the Debtor and Creditor Law. Debt is there defined as “any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent.” (Debtor and Creditor Law, § 270 et seq.) Since by its terms, this definition is applicable only to the section where it is defined it is inapplicable to the case at bar. This court need not now determine whether it is applicable to Michaels’ transfer of the stock certificate and lease to the third party from whom Chemical obtained them, or whether the transfer was such a fraudulent conveyance. See, also, SCPA 208, where “debt” has been broadly interpreted to include any obligation amounting to a property right of the decedent’s estate, given the intent to recognize broad jurisdiction over estates. (Siegel, Practice Commentary, McKinney’s Cons Laws of NY, Book 58A, SCPA 208.)